[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Belew,* Slip Opinion No. 2014-Ohio-2964.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2964

THE STATE OF OHIO, APPELLEE, *v.* BELEW, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Belew,* Slip Opinion No. 2014-Ohio-2964.]

*Appeal dismissed as having been improvidently accepted.*

(No. 2013-0711—Submitted March 12, 2014—Decided July 10, 2014.)

APPEAL from the Court of Appeals for Lucas County,

No. L-11-1279, 2013-Ohio-1078.

_____

{¶ 1} The cause is dismissed as having been improvidently accepted.

PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 2} I respectfully dissent from the court's decision to dismiss this case as having been improvidently accepted. Amici curiae in support of appellant, Jeffery Belew, filed two memoranda in support of jurisdiction asserting that this case involves a matter of great general interest and public importance and filed

two supporting merit briefs.[1]  And although the state does not disagree with Belew's proposition that "[w]hen credibly diagnosed, a trial court must consider combat-related post-traumatic stress disorder and other service-related disabilities as mitigation when imposing sentence on a military veteran," it argues that the trial court here did properly consider those factors when sentencing him.

{¶ 3}   I believe that we should render an opinion on how posttraumatic stress disorder ("PTSD") must be considered by a court when it sentences a military veteran.  And just as important, we should clarify the standard that an appellate court must use in reviewing a sentence of this type.  It is my position that only a full opinion by this court will clarify both the appellate court's standard of review and the trial court's need to support the record for a felony sentence.

## Case Background

{¶ 4}   On April 10, 2011, Belew fired at least four shots at police officers who were responding to a domestic-disturbance call in Oregon, Ohio.  Belew's shots struck an arriving police car twice, and he did not respond to commands to cease fire until he was wounded by shots fired by the officers.  He was arrested and received hospital care.

{¶ 5}   Belew was indicted on April 20, 2011, for two counts of attempted aggravated murder of a law-enforcement officer and two counts of felonious assault, which were first-degree felonies under R.C. 2903.11(D)(1) because the shots were fired at peace officers.  Each count contained specifications that he both displayed, brandished, indicated possession of, or used a firearm (R.C. 2941.145) and discharged his firearm at peace officers (R.C. 2941.1412).  He

---

[1] One brief was filed by Ohio Suicide Prevention Foundation, Disability Rights Ohio, National Disability Rights Network, National Alliance on Mental Illness of Ohio, and Ohio Empowerment Coalition, Inc.  The other brief was filed by the Arms Forces.

entered pleas of not guilty and not guilty by reason of insanity ("NGRI") to all charges and specifications.

{¶ 6} As a result of his NGRI plea, Belew was evaluated by two psychologists, who provided reports to the court concluding that he did not qualify for the insanity defense. One of the psychologists diagnosed him with alcohol dependence and persistent major depression and PTSD as a result of his military service in Iraq. That psychologist believed that Belew was hoping to be killed by police on the day of the shooting. The other psychologist found evidence of possible malingering or a personality disorder.

{¶ 7} After plea negotiations, Belew changed his plea to guilty and the state dismissed certain counts and specifications. He was sentenced to 27 years in prison: two consecutive ten-year terms for each count of felonious assault to be served consecutively to two concurrent seven-year terms for the firearm specifications. He appealed his sentence to the Sixth District Court of Appeals, which affirmed the trial court's order, holding that the trial court appropriately weighed statutory factors in imposing his sentence. We then accepted a discretionary appeal.

{¶ 8} In his appeal before this court, Belew contends that the sentencing judge did not understand PTSD and did not give appropriate weight to PTSD as a mitigating factor. Belew argues that his actions were tied to his PTSD because his heightened responses, including irritability and anger, and his exacerbated alcoholism caused him to react in a manner he would not have otherwise. He characterizes his 27-year aggregate sentence as an abuse of the court's discretion as well as being contrary to law.

{¶ 9} I believe that this case provides us with an opportunity to review statutory requirements for the consideration of mitigating evidence and the imposition of consecutive sentences, as well as the standard of review to be used by the courts of appeals.

**Legal Analysis**

*The Appellate Standard of Review*

{¶ 10} Ohio's felony-sentencing scheme allows judges to exercise discretion within statutory bounds. The sentencing court is required to follow statutory direction in choosing a prison term, and it is no longer enough that a sentence falls within the permitted range. Regarding appellate review, after we struck down portions of the sentencing statutes in light of federal law in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, a plurality of this court set forth a two-step approach for courts of appeals to use: (1) whether the trial court adhered to all applicable rules and statutes in imposing the sentence and (2) whether a sentence within the permissible statutory range constitutes an abuse of discretion. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26. But as noted by the *Kalish* dissent, R.C. 2953.08(G)(2) had expressly rejected abuse of discretion as the standard for appellate review and *Foster* had not severed that portion of the statute. *See id.* at ¶ 66 (Lanzinger, J., dissenting).

{¶ 11} After the United States Supreme Court, in *Oregon v. Ice*, 555 U.S. 160, 163, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), upheld the ability of trial court judges to make findings of fact before imposing consecutive sentences, the General Assembly modified R.C. 2953.08(G), which governs appellate review of sentences, as part of 2011 Am.Sub.H.B. No. 86. Effective September 30, 2011, R.C. 2953.08(G) reads:

> (2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate

the sentence and remand the matter to the sentencing court for resentencing. *The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action* authorized by this division *if it clearly and convincingly finds eith*er of the following:

(a) *That the record does not support the sentencing court's findings* under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) *That the sentence is otherwise contrary to law.*

(Emphasis added.)

{¶ 12} R.C. 2953.08(G)(2) repudiates the abuse-of-discretion standard in favor of appellate review that upholds a sentence unless the court of appeals clearly and convincingly finds that the record does not support the trial court's findings.

*The Sentencing Hearing*

{¶ 13} The trial court in this case received the psychological reports and the presentence-investigation report into evidence. Psychologist Dr. Wayne Graves, who testified at the sentencing hearing, opined specifically about the diagnosis of PTSD, which resulted from Belew's military service in Iraq, and about the consequences of PTSD. Defense counsel and the prosecuting attorney also spoke. Afterwards, the sentencing judge stated:

I have reviewed the presentence report that has been prepared, I've reread the report prepared by Dr. Charlene Cassel of the Court Diagnostic and Treatment Center, I've reread Dr. Wayne Graves' report, I have read two letters from the Defendant's mother, and

I've listened very carefully to the testimony of Dr. Wayne Graves here today, as well as listened to what Counsel and Defendant has had to say, and I've balanced all of that information in sentencing this afternoon.

{¶ 14} She then addressed the defendant directly:

Mr. Belew, you claim that you suffer from post-traumatic stress disorder as a result of being in the military and you provide that as an excuse for your actions. There is no excuse, Mr. Belew. I have to—I feel that I'm compelled because of my concerns of why you entered the military, to weigh that. And your words to Dr. Charlene Cassel were, I joined the Marines to see how many people I could kill. That's, generally—if I'm not mistaken, people don't join the military to see how many people they can kill. You were continually in trouble and constantly drunk and under the influence of alcohol and drugs, and you received a bad conduct discharge after being court martialed for stealing government property.

{¶ 15} Turning to the offenses, the judge then stated:

These offenses are extremely serious, Mr. Belew, these officers could have been killed, because you intended to kill them. They responded to a call of a fight between you and your brother because you were in possession of a handgun and were extremely intoxicated. And you don't remember what happened that night, as you said, because you were suffering from an alcohol blackout.

And according to Dr. Charlene Cassel, people who are suffering alcohol blackouts do not do things that are uncharacteristic of things that they wouldn't normally do. You shot at Officer Martin when he stopped his vehicle, you shot at him several times, and when the other two officers came to assist they gave several commands to you to stop and put down your weapon, but you continued to walk toward them with your gun pointed at them. And it was only after you were wounded that you stopped. You are lucky to be standing here today, Mr. Belew, because they very well could have killed you.

{¶ 16} The judge next stated: "You do have a minimal criminal history." However, she also stated, "because of your actions I believe you are a danger to this community."

{¶ 17} The judge specifically stated that she had considered R.C. 2929.19, Crim.R. 32, and the statutory factors under R.C. 2929.11 and 2929.12 before imposing ten-year consecutive prison sentences for the two first-degree felonies of felonious assault. The concurrent seven-year terms for the gun specifications were ordered to be served consecutively to the felonious-assault terms, with the judge finding pursuant to R.C. 2929.14(C)(4) that consecutive sentences were necessary to protect the public from future crime and were not disproportionate to the seriousness of Belew's conduct. She also stated that no single prison term would reflect the seriousness of his conduct for the offenses committed as part of a course of conduct. *See* R.C. 2929.14(C)(4)(b).

*Appellant's Arguments*

{¶ 18} Belew contends that the court did not properly consider PTSD as a substantial ground to mitigate his conduct and argues that he should have received no more than the minimum aggregate sentence of ten years (three-year concurrent

sentences for the felonious assaults, served consecutively to the concurrent mandatory seven-year sentences for the gun specifications). In essence, by objecting to the manner in which the court considered his PTSD, Belew is actually asking for a reweighing of the statutory factors that the trial court already balanced in determining his sentence. But as long as the trial judge properly considered all mitigating factors, it was within her discretion to weigh them in any manner that she saw fit and to assign such weight to each factor as she thought appropriate. *See State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 130 (the weight, if any, to assign a given factor is a matter for the discretion of the individual decisionmaker). Stated another way, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

*The Record in This Case*

{¶ 19} The state in this case argues that the trial judge did consider the PTSD. The record indicates that Belew's alcohol abuse and troubles with authorities started before he enlisted in the Marines after high school. His military experience seemed to aggravate his problems.

{¶ 20} Belew served more than three years in the Marines but was given a bad-conduct discharge after "joy riding" in a government vehicle while intoxicated. His psychological evaluations revealed that he began abusing other substances during his service in Iraq, and when he returned to the United States, his alcohol use increased significantly. Belew struggled to adjust upon his return to civilian life, often drinking to the point of passing out or blacking out.

{¶ 21} Although R.C. 2929.12(F) was not in effect at the time of Belew's sentencing, that subsection now covers the issue of PTSD for those who have served in the military. R.C. 2929.12(F), which became effective on March 22, 2013, is a stand-alone provision and was not placed under subsection (D) (factors indicating that the offender is likely to commit future crimes) or subsection (E)

(factors indicating that the offender is not likely to commit future crimes). *See* 2012 Am.Sub.H.B. No. 197. R.C. 2929.12(F) reads:

> The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses.

In other words, the court must consider PTSD and its possible impact, but the General Assembly has recognized that the mitigating weight to assign to PTSD is a matter for the sentencing judge.

{¶ 22} Here, the record shows that the court considered the issue of Belew's PTSD. The judgment entry recites that the judge considered the record, oral statements, victim-impact statement, and presentence report. R.C. 2929.12(A) now states that a court that imposes a felony sentence

> has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may

consider any other factors that are relevant to achieving those purposes and principles of sentencing.[2]

**{¶ 23}** Belew did not receive a maximum 34-year sentence for the offenses and specifications for which he was convicted. The sentencing judge's entry stated that the prison terms were ordered to be served consecutively because consecutive sentences were "necessary to fulfill the purposes of R.C. 2929.11, and not disproportionate to the seriousness of the offender's conduct or the danger the offender poses" and that the "harm caused was great or unusual." The record here did not allow the Sixth District Court of Appeals to clearly and convincingly find that the record does not support the sentencing court's findings.

### Conclusion

**{¶ 24}** Although different judges may have weighed the statutory factors at issue here differently, the relevant statutes did not allow the appellate court to substitute its own judgment for that of the trial judge. All findings of the trial judge have record support and the required findings were made. I would therefore affirm the judgment of the court of appeals. I respectfully dissent from the order that dismisses this case as improvidently accepted.

O'CONNOR, C.J., concurs in the foregoing opinion.

———————————————

**O'NEILL, J., dissenting**.

**{¶ 25}** The United States Marine Corps took a marginal recruit from an abusive family and turned him into a fighting machine. They sent him to Iraq to defend all of us, and in the process they turned him into a confused alcoholic with a clear diagnosis of posttraumatic stress disorder ("PTSD") and possibly a traumatic brain injury.

---

[2] The phrase within R.C. 2929.12(A) referring to R.C. 2929.12(F) was added after Belew was sentenced. *See* 2012 Am.Sub.H.B. No. 197.

**{¶ 26}** Once home, and still on active duty, he became a misfit alcoholic who was, essentially, no longer of any use to the Marine Corps. He was often drunk, did not obey orders, and most significantly, received no treatment whatsoever for the PTSD that he had sustained in the fog of war.

**{¶ 27}** Not too surprisingly, on one drunken day while on active duty, he and a friend "borrowed" a Humvee and went on a joyride. They were quickly apprehended by the officer of the day, and from that point forward, it was clear that the Marines no longer needed the product they had created.

**{¶ 28}** He was demoted and given a bad-conduct discharge for the Humvee incident. Significantly, his less-than-honorable discharge deprived him of the medical assistance from the federal Department of Veterans Affairs that he so desperately needed.

**{¶ 29}** As a civilian he simply did not fit in, and, still suffering from untreated and undiagnosed PTSD, his antisocial behavior predictably escalated.

**{¶ 30}** We are here today because of the tragic events that led to his conviction. It is without question, and well supported in the record, that this troubled throwaway from society wanted to commit suicide by cop. There is no other explanation for why an individual would open fire on two approaching, well-trained, well-armed police officers. He failed. Rather than dying, Belew received a nonfatal bullet to the chest—and not one of the officers was struck. He took responsibility for his actions and pled guilty to several offenses but received an aggregate sentence of 27 years in prison that was far harsher than it should have been.

**{¶ 31}** Incredibly, the trial court and the court of appeals have locked onto the phrase "no excuse." The trial court stated, "Mr. Belew, you claim that you suffer from post-traumatic stress disorder as a result of being in the military and you provide that as an excuse for your actions. There is no excuse, Mr. Belew."

**{¶ 32}** I would respectfully suggest that one trial court judge, three appellate court judges, and the majority of this court simply do not get it. PTSD is not an excuse. It is an explanation.

**{¶ 33}** Mr. Belew's disability was not an "excuse." He was and is suffering from a well known and definable disease, which was diagnosed by Dr. Wayne Graves, whose testimony was admitted into evidence without objection and presented in the sentencing hearing.

**{¶ 34}** After the date of the trial court's sentencing of Belew in this case, the General Assembly enacted the following language: "The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States." R.C. 2929.12(F).

**{¶ 35}** This case is clearly the poster child for implementation of the new statute, and today this court has the rare opportunity to lead with clarity. The record is before us. There is more at stake here than garden-variety excuses for criminal culpability. Belew was a marginal Marine recruit; he developed PTSD while on active duty; and he was turned out of the service with a bad-conduct discharge and little or no capacity to function safely in society. Tragically, he is not the only member of the armed forces to arrive at this juncture. He has been diagnosed with PTSD as a result of his time in the Marine Corps—a condition that remains untreated. It is inexcusable that he cannot access federal benefits for his PTSD. We can and should do better. I would reverse the judgment of the court of appeals and remand this case to the trial court for a new sentencing hearing and decision that properly takes into consideration Belew's military-service record and his diagnosis of PTSD. Anything else is unreasonable.

_____

Julia Bates, Lucas County Prosecuting Attorney, and David Cooper and Michael D. Bahner, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick and William J. Mooney, Assistant Public Defenders, for appellant.

Spengler Nathanson, P.L.L., and Laurie J. Pangle, urging reversal for amicus curiae the Arms Forces.

McDonald Hopkins, L.L.C., and R. Jeffrey Pollock, urging reversal for amici curiae Ohio Suicide Prevention Foundation, National Alliance on Mental Illness of Ohio, and Ohio Empowerment Coalition, Inc.

Ohio Disability Rights Law and Policy Center, Inc., and Kristen Henry, urging reversal for amici curiae Disability Rights Ohio and National Disability Rights Network.

_____