[Cite as *State v. Brooks*, 2016-Ohio-5685.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 14 MA 0150 |
| VS. | ) | |
| | ) | OPINION |
| ROBERT BROOKS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 10 CR 1113

JUDGMENT:                                        Affirmed.

APPEARANCES:
For Plaintiff-Appellee

Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant

Attorney James Gentile
42 North Phelps Street
Youngstown, Ohio 44503

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: September 2, 2016

DeGENARO, J.

{¶1} Defendant-Appellant, Robert Brooks, appeals the judgment of the trial court convicting him of multiple counts and specifications and sentencing him accordingly, challenging only his sentence. Because the trial court properly considered the factors contained in R.C. 2929.12(F)—Brooks' military service and his condition traceable to that service, which was a contributing factor to the commission of the offenses—when imposing sentence, the trial court's judgment is affirmed.

## Facts and Procedural History

{¶2} Brooks was indicted on multiple counts of aggravated murder with a death penalty specification, aggravated robbery and arson, kidnapping and attendant firearm specification. Brooks, with his brother Paul and another co-defendant both separately convicted, were accused of robbing two realtors after summoning them to properties under the false pretenses of a showing. One of the victims, Vivian Martin, was murdered and fire was set to the property she was showing.

{¶3} Brooks entered into a plea agreement whereby the State agreed to dismiss the death penalty specifications from the two aggravated murder counts and Brooks agreed to plead guilty to the remaining counts. The State stipulated the two aggravated murder counts would merge, and the firearm specifications would merge with one another and be served consecutive and prior to the other counts. There was no agreed-upon sentencing recommendation. Following a hearing, the trial court accepted Brooks' pleas as knowing, voluntary and intelligent, dismissed the death penalty specifications and continued the matter for sentencing.

{¶4} At sentencing, the State requested the maximum sentence of life in prison without the possibility of parole, presenting its version of the facts, and several of the deceased victim's family members gave victim impact statements. Brooks was provided the opportunity to present evidence to mitigate his sentence: he called several expert and lay witnesses to testify and submitted 14 exhibits.

{¶5} Dr. Thomas Swales, a neuropsychologist, stated that Brooks was diagnosed with post-traumatic stress disorder ("PTSD") following injury by an improvised explosive device while serving in the military, providing background

information about what that diagnosis means. Brooks was hospitalized in Germany and at Walter Reed Medical Center ("Walter Reed") for approximately two years for treatment of his service injuries. Once released from Walter Reed, Brooks continued treatment with Veteran's Affairs hospitals in Cleveland and Youngstown. During his treatment at the VA, Brooks expressed thoughts of killing people but was never hospitalized or afforded more substantial treatment. Upon review of the records and treatment, Dr. Swales indicated that, if Brooks had been his patient, he would have hospitalized him, even if done involuntarily. Dr. Swales also opined the care provided by the VA was inadequate.

{¶6} Dr. Swales further stated that he performed his own testing of Brooks and verified the diagnosis of PTSD. Dr. Swales described Brooks' specific PTSD as "* * * severe and extreme. It's one of the worst cases I've ever seen." Speaking about the effects of PTSD, Dr. Swales noted that having PTSD, coupled with other factors in Brooks' life such as an abusive childhood, raises the likelihood of a person committing a violent offense. In fact, Brooks' childhood was so tumultuous that he was forced to change both his name and social security number in order to escape abuse from his own father.

{¶7} Brooks' childhood was further explained by Rose and John Langston, Brooks' aunt and uncle. Rose stated that Brooks lived a very transient life due to his mentally ill mother and abusive father. The military provided stability that Brooks never had as a child.

{¶8} Mr. Buros, a youth services coordinator in Wisconsin where Brooks once lived with his brother and mother, stated that Brooks was living in a shelter in Wisconsin after having his identity changed, including his social security number, in an attempt to escape abuse from his father. Mr. Buros helped Brooks gain admission into the Wisconsin National Guard Challenge Academy. In this environment, according to Mr. Buros, Brooks thrived, and during his time there, Brooks decided to pursue the military once he was an adult.

{¶9} Hunafa Armstrong, a veteran and PTSD sufferer who met Brooks at

Walter Reed, explained how his own PTSD affected him. His wife Monica also testified.

**{¶10}** Dr. Sandra McPherson, a forensic psychologist, testified regarding Brooks' difficult childhood. Dr. McPherson noted that Brooks suffered exposure to "severe violence" during childhood, was forced to live a transient life due to instability and violence, and was even forced to change his identity as a result. Dr. McPherson further opined that because of his childhood Brooks was even less capable of coping with PTSD than other people. Dr. McPherson did not limit Brooks' onset of PTSD to, specifically, the injuries that Brooks suffered. Rather, she believed that the horrors Brooks experienced in combat also contributed, specifically noting Brooks witnessed people being killed in combat by being hung on meat hooks.

**{¶11}** Dr. McPherson went on to discuss what it meant to Brooks when he could no longer serve in the military due to the injuries he received in combat and described it as, "a loss of everything that was making life meaningful for him at the time."

**{¶12}** As a result of Brooks' PTSD, Dr. McPherson noted that he suffered a lack of ability to "self-regulate" which results in a high risk of "undisciplined behavior." Dr. McPherson did not, however, rule out the possibility of Brooks' condition improving. Rather, Dr. McPherson noted that with proper treatment it is possible to reverse and/or reduce the effects of PTSD as the brain can correct some of the damage done to it by PTSD.

**{¶13}** Brooks' mother, Lisa, stated that prior to suffering from PTSD, Brooks was a decorated soldier in the United States Military. During his service he received two Purple Hearts, Two Army Commendation Medals, a Combat Badge, a Good Service Metal, a USA/USAF Presidential Unit Citation, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Iraq Campaign Medal and an Army Service Ribbon.

**{¶14}** Following testimony, both sides were given the opportunity to make final statements. The trial court and counsel then discussed the role of R.C.

2929.12(F) in determining Brooks' sentence. The sentencing court concluded that it was only obliged to note on the record that it had considered R.C. 2929.12(F) in determining the sentence despite Brooks' argument that more specific findings need be made relative to that section.

{¶15} Brooks was afforded his right to allocution and made a brief statement. Defense counsel also read a statement that Brooks had previously prepared.

{¶16} The trial court then sentenced Brooks to life without parole on the aggravated murder charge and 10 years on each of the remaining charges, to be served concurrently. Multiple counts and specifications were merged, and Brooks was sentenced to three years on the remaining firearm specification, to be served prior to and consecutive to the other counts, with jail-time credit plus any additional time awaiting conveyance. He was also sentenced to five years of mandatory post-release control and notified about the ramifications of violating post-release control.

### R.C. 2929.12(F)

{¶17} Brooks raises two assignments of error on appeal, which are related and will be discussed together:

> The trial court improperly applied the statutory guidelines and/or issued a sentence that is otherwise contrary to law requiring modification or vacature by this Court.

> The trial court erred by failing to make specific findings relative to R.C. 2929.12(F) thereby requiring a new sentencing hearing.

{¶18} The Ohio Supreme Court recently stated the standard of review to apply to felony sentences challenges: "Applying the plain language of R.C. 2953.08(G)(2), * * * an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, Slip Opinion 2016-Ohio-1002, ¶ 1.

**{¶19}** Brooks' appeal focuses on R.C. 2929.12(F), a relatively recent sentencing factor:

> The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses.

**{¶20}** First, Brooks argues that the trial court's sentence of life without parole was contrary to law because the court did not properly consider R.C. 2929.12(F). However, much of the evidence presented at sentencing centered on Brooks' prior military service and the resulting PTSD diagnosis. Further, the trial court's statements during the hearing make it clear that it considered the statutory factors.

**{¶21}** Initially, the trial court stated: "I have considered all of the information that has been provided to me that was appropriate for the court's consideration." Further elaborating, the trial court noted that: "2929.12 does list various factors that shall be considered by the court, and these factors are fully laid out in the statute. In fact, they were talked about by both the prosecutor and by defense counsel, and I'm not going to repeat them here, but I am going to indicate that I have considered each and every one of those factors." Finally, the trial court specifically addressed the impact of R.C. 2929.12(F):

> And I would also include there is a fairly new section in that section, which is Section F. And that section indicates that the court shall consider military service, and there are certain requirements that the court shall consider as part of that in looking at the various factors, and the court has fully considered that. In fact, that was a substantial part of what the court was provided with today.

**{¶22}** Second, Brooks asserts that the trial court erred by failing to make

explicit findings under R.C. 2929.12(F). Indeed, the trial court specifically declined to make such findings during the hearing and there are no findings in the sentencing entry.

**{¶23}** R.C. 2929.12(F) is a relatively recent statutory provision; it became effective on March 22, 2013. *See* 2012 Am.Sub.H.B. No. 197. There is no case law directly addressing the issue of whether findings are required pursuant to this subsection. In *State v. Eltringham*, 7th Dist. No. 13 CO 7, 2014-Ohio-4149, this court did state that: "[n]ewly enacted R.C. 2929.12(F) does not require any particular outcome. It simply directs the trial court to consider a defendant's military service." *Id.* at ¶ 2. However, that statement was essentially dicta with regard to the need to make findings, since *Eltringham* involved the appeal of a denial of a motion for resentencing under R.C. 2929.12(F), where the statute was not yet effective at the time defendant filed his motion, much less at the time of sentencing. *Id.* at ¶ 1.

**{¶24}** In *State v. Belew*, 140 Ohio St.3d 221, 2014-Ohio-2964, 17 N.E.3d 515, ¶ 21, another case where the statute was not effective at the time of defendant's sentencing, the appeal was dismissed by the Ohio Supreme Court as having been improvidently accepted. *Id.* at ¶ 1. But in her dissent, Justice Lanzinger states the following with regard to R.C. 2929.12(F):"the [sentencing] court must consider PTSD and its possible impact, but the General Assembly has recognized that the mitigating weight to assign to PTSD is a matter for the sentencing judge." *Id.* at ¶ 21 (Lanzinger, J., dissenting.)

**{¶25}** Thus, we are left with looking to the statutory language to determine whether findings are required.

> The cornerstone of statutory interpretation is legislative intention. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 53 N.E.2d 1021, 1023. In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 304 N.E.2d 378, 381. "If the meaning of the statute is unambiguous and

definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465.

*State v. Evankovich*, 7th Dist. No. 09 MA 168, 2010-Ohio-3157, ¶ 6.

**{¶26}** We have consistently held, as have our sister districts, that findings are *not* required under the seriousness and recidivism factors found in R.C. 2929.12(B)-(E).) For example, we stated in *State v. Pyles* that "[a]lthough the trial court is required to consider the factors set forth in R.C. 2929.12, the trial court is not required either to discuss the factors on the record or even state that the factors were considered, so long as the record allows the reviewing court to determine that the proper consideration occurred." (Emphasis added.) *State v. Pyles*, 7th Dist. No. 13 BE 11, 2014-Ohio-4146, ¶ 6, citing *State v. Scott*, 3d Dist. No. 6-07-17, 2008-Ohio-86. *See also State v. Hardy*, 7th Dist. No. 14 MA 30, 2015-Ohio-2206, ¶ 13.

**{¶27}** R.C. 2953.08(G)(2) specifies sentencing provisions that do require the trial court to make explicit findings, for example with regard to consecutive sentences under R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659 (2014), at syllabus. However, the statute does not identify R.C. 2929.12 as a sentencing statute requiring findings by a trial court:

The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or] (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

**{¶28}** Comparing the statutory language in R.C. 2929.14(C)(4) with R.C. 2929.12(B)-(E), and R.C. 2929.12(F), at issue here, is instructive. Pursuant to R.C.

2929.14(C)(4) (emphasis added):

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively *if the court finds* that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, *and if the court also finds* any of the following: * * *

**{¶29}** The clear statutory language in R.C. 2929.14(C)(4) requires findings. By contrast, the language in R.C. 2929.12(B)-(E) does not; instead, it directs the trial court to consider relevant sentencing factors:

> (B) The sentencing court *shall consider* all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: * * *

> (C) The sentencing court *shall consider* all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense: * * *

> (D) The sentencing court *shall consider* all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes: * * *

> (E) The sentencing court *shall consider* all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes: * * *

R.C. 2929.12(B)-(E) (Emphasis added.)

**{¶30}** R.C. 2929.12(F) uses the same language as R.C. 2929.12(B)-(E): that the trial court shall consider the factors.  Unlike in R.C. 2929.14(C)(4), the terms find or finding appear nowhere in subsection (F):

> The sentencing court *shall consider* the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses.

R.C. 2929.12(F) (Emphasis added.)

**{¶31}** If the General Assembly had made the policy decision to require trial courts to make explicit findings under R.C. 2929.12(F), then it could have exercised its constitutional authority to do so.  Instead, the statutory language chosen merely guides a trial court's sentencing authority by directing it to consider a defendant's military service, his physical/mental condition traceable to his service, and whether that condition was a contributing factor to the commission of the offenses, in the exercise of its independent sentencing discretion.  The General Assembly chose not to require a trial court to make such findings, as it has with other sentencing statutes.

**{¶32}** Because the trial court was not required to make findings and did properly consider R.C. 2929.12(F), Brooks' sentence is not contrary to law.  Accordingly, the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Robb, J., concurs.