[Cite as *State v. Crawford*, 2017-Ohio-4401.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patrica A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JAMES D. CRAWFORD | : | Case No. 16-CA-00011 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Perry County Court
of Common Pleas, Case No. 15-CR-
0042

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      June 19, 2017

APPEARANCES:

For Plaintiff-Appellee                                  For Defendant-Appellant

JOSEPH A. FLAUTT                              JAMES S. SWEENEY
Prosecuting Attorney                             James Sweeney Law, LLC
111 North High Street, P.O. Box 569      341 South Third Street, Suite 100
New Lexington, Ohio 43764                    Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Appellant James D. Crawford appeals a judgment of the Perry County Common Pleas Court convicting him of felonious assault (R.C. 2903.11(A)(1)) and sentencing him to five years incarceration. Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On Friday April 25, 2014, Richard McGrath received a phone call from appellant asking him to come over to talk about some problems appellant was experiencing. McGrath lived with Kimberly Hanning, his long-term girlfriend, and drove his pickup truck to appellant's home.

**{¶3}** Appellant and McGrath drank beer and moonshine at appellant's home, before driving to the home of Darla Jackson in McGrath's pickup truck. Appellant and McGrath had a disagreement at Jackson's home, and appellant stated to McGrath, "[T]hen I'll just beat the fuck out of you." Tr. 139. The pair left Jackson's home shortly before midnight.

**{¶4}** After arriving back at appellant's residence, McGrath made a statement to appellant which appellant did not like. Appellant hit McGrath and drug him outside. While outside, appellant continued to hit McGrath, kicked him in the jaw while wearing steel-toed boots, and kicked him in the ribs.

**{¶5}** Appellant and a man Hanning did not know brought McGrath home the next morning. They did not bring McGrath's pickup truck, but sometime the next day Hanning noticed the truck had been returned. McGrath was unable to walk and the men carried him into the house with McGrath's arms around their shoulders and his feet barely

touching the floor.  They placed him in a recliner, which he promptly fell out of.  Appellant told Hanning that McGrath had fallen off a wall.

{¶6}    Hanning noted that McGrath's face looked strange, and he was barely able to talk.  He did not want her to call 911 or the police.  She drug him into the bedroom using a sheet, and took off his clothing.  He moaned a lot.  Eventually, he agreed that she should call 911.  He was initially treated at a hospital in Nelsonville before being transferred to Grant Hospital in Columbus.  Bruising on McGrath's face, as depicted in pictures taken at the hospital, resembled the imprint of a boot.

{¶7}    McGrath woke up in the Columbus hospital with two broken jaws, a broken leg, five broken ribs, and a broken shoulder.  He had surgery on his jaw, and at the time of trial needed surgery on his eye and shoulder.

{¶8}    On the day after the assault, Clarence Fulk, appellant's brother-in-law, had a birthday party at his home.  While at the party, appellant told Fulk that he and McGrath got into a fight, and he might have choked McGrath.  McGrath's brother, Robert, was also at the party.  Appellant told Robert, "You're [sic] fucking brother will never drink moonshine in my house again."  Tr. 144.  Appellant later told Robert that he "beat the hell out of him." *Id.*

{¶9}    Appellant was indicted on one count of felonious assault by the Perry County Grand Jury.  The case proceeded to jury trial in the Common Pleas Court.

{¶10}  At trial, appellant presented the testimony of James Bray, a neighbor and friend, who testified that he saw McGrath drive his pickup truck the Saturday morning after the alleged assault.  He remembered seeing McGrath because the pickup had a flat tire.  Appellant's estranged wife testified that she saw McGrath sitting in his truck at

appellant's house on Saturday morning, needing the truck's battery charged, and he appeared to be fine.

{¶11} Appellant testified that while McGrath was at his house, they drank beer and moonshine. Appellant was grilling chicken and thought McGrath was going to "take a leak." Tr. 200. He then heard "moaning and groaning" as McGrath fell off a wall by the side of the house. He was unable to lift McGrath because of his bad back, and called his brother to help lift McGrath. He testified that they put McGrath to bed downstairs because he was too drunk to drive.

{¶12} Appellant's brother, Thomas Fulk, testified that appellant called him at about 2:00 in the morning because he wanted someone out of his house. When Fulk arrived, he found appellant and McGrath in the living room, and both were impaired. He called his uncle, David Starner, who testified that Fulk said he needed help with a "couple of drunks." Tr. 249. They testified that they ultimately took McGrath to a basement bedroom, and they observed only minor injuries on him.

{¶13} The jury found appellant guilty as charged. The court convicted him of felonious assault and sentenced him to five years incarceration.

{¶14} Appellant assigns three errors on appeal to this Court:

{¶15} "I. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER APPELLANT'S MILITARY SERVICE AT SENTENCING AS REQUIRED BY R.C.2929.12(F).

**{¶17}** "III.    THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO PRODUCE AND TRANSCRIBE GRAND JURY PROCEEDINGS."

I.

**{¶18}** Appellant argues that the judgment convicting him of felonious assault is against the manifest weight of the evidence.  He specifically argues that the testimony of McGrath identifying appellant as the assailant is not credible in light of the testimony of appellant and the other defense witnesses.

**{¶19}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶20} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another.

{¶21} While appellant is correct that the State's witnesses and his witnesses provided conflicting testimony about the events on the evening of April 25, 2014 and McGrath's condition the next morning, the judgment is not against the manifest weight of the evidence. McGrath testified that appellant hit him and kicked him, causing him to suffer two broken jaws, a broken leg, five broken ribs, and a broken shoulder. Manning testified that when appellant and another man brought McGrath home the morning of April 26, 2014, McGrath was not able to walk and could barely talk.

{¶22} The testimony of McGrath that appellant assaulted him on the night of April 25, 2014, is further supported by the testimony of Darla Jackson, who testified that earlier that evening, she heard appellant say to McGrath, "[T]hen I'll just beat the fuck out of you." Tr. 139. Clarence Fulk, appellant's brother-in-law, testified that at a birthday party on Saturday, April 26, appellant told Fulk that he and McGrath got into a fight, and he might have choked McGrath. McGrath's brother, Robert, was also at the party. Robert testified that appellant told him at the party, "You're [sic] fucking brother will never drink moonshine in my house again." Tr. 144. Appellant later told Robert that he "beat the hell out of him." *Id.*

{¶23} Although appellant and his witnesses testified that McGrath fell off a wall outside appellant's property and was only minimally injured, the credibility of witnesses is primarily within the province of the jury. The jury did not lose its way in finding appellant guilty of felonious assault.

**{¶24}** The first assignment of error is overruled.

II.

**{¶25}** In his second assignment of error, appellant argues that the trial court erred in failing to consider his military service in sentencing.

**{¶26}** R.C. 2929.12(F) provides:

(F) The sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses.

**{¶27}** While the statute requires the court to consider the offender's military service, the statute does not require the trial court to make specific findings concerning military service:

If the General Assembly had made the policy decision to require trial courts to make explicit findings under R.C. 2929.12(F), then it could have exercised its constitutional authority to do so. Instead, the statutory language chosen merely guides a trial court's sentencing authority by directing it to consider a defendant's military service, his physical/mental condition traceable to his service, and whether that condition was a contributing factor to the commission of the offenses, in the exercise of its independent sentencing discretion. The General Assembly chose not to require a trial court to make such findings, as it has with other sentencing statutes.

**{¶28}** *State v. Brooks*, 7th Dist. Mahoning 14 MA 0150, 2016-Ohio-5685, ¶ 31, *appeal not allowed*, 148 Ohio St.3d 1444, 2017-Ohio-1427, 72 N.E.3d 657, ¶ 31 (2017).

**{¶29}** The trial court stated that it considered the sentencing criteria contained in R.C. 2929.12. While appellant testified at trial that he served in the Army Reserve for six years, the record is devoid of any evidence that he has an emotional, mental or physical condition traceable to his service which was a contributing factor in the commission of the instant offense. We find no error in the trial court's failure to make a specific finding relative to military service.

**{¶30}** The second assignment of error is overruled.

III.

**{¶31}** In his final assignment of error, appellant argues that the trial court erred in denying his motion for a transcript of McGrath's grand jury testimony. In his motion, appellant argued that the transcript was necessary to demonstrate that the victim had not identified appellant as the assailant. He stated in the motion that he had a witness who had spoken to McGrath multiple times about the incident, and McGrath told this witness that he did not know how he was injured because he was drunk at the time. Appellant argued that there was a "very real chance" that McGrath's testimony before the grand jury was inconsistent with what his testimony at trial would be concerning his ability to identify his assailant.

**{¶32}** Ohio Crim. R. 6(E) provides, in part, that "[d]eliberations of the grand jury and the vote of any grand juror shall not be disclosed." However, if the defense shows a "particularized need" for disclosure that outweighs the need for secrecy, all relevant portions of a grand jury transcript should be produced. *State v. Greer*, 66 Ohio St.2d 139,

420 N.E.2d 982 (1981), paragraph two of the syllabus. A "particularized need" exists "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair trial." *State v. Davis*, 38 Ohio St.3d 361, 365, 528 N.E .2d 925 (1988).   A claim of particularized need cannot be replete with speculation and innuendo. *State v. Stojetz*, 84 Ohio St.3d 452, 460, 1999–Ohio–464, 705 N.E.2d 329. Impeachment purposes may be a proper basis for disclosure of grand jury testimony, but that purpose alone is not sufficient:  the "particularized need" standard must still be met. *State v. Hernandez*, 7th Dist. Columbiana No. 87-C-56, 1991 WL 44362, *aff'd*, 63 Ohio St.3d 577, 589 N.E.2d 1310 (1992).

**{¶33}** The decision whether to release grand jury testimony "is within the discretion of the trial court." *Greer, supra*, at paragraph one of the syllabus. A decision to deny release will not be reversed absent an abuse of discretion. *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988). In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶34}** The trial court did not abuse its discretion in overruling appellant's motion for disclosure of the victim's grand jury testimony.  Appellant's motion merely speculated that McGrath may have failed to identify appellant as the offender in his grand jury testimony based on the statement of a witness who claimed McGrath stated he could not identify his assailant.   As noted in *Hernandez, supra,* a defendant must show a particularized need for disclosure beyond the mere use of the grand jury testimony for impeachment purposes.   Appellant did not do so in the instant case.

**{¶35}**  The third assignment of error is overruled.

**{¶36}**  The judgment of the Perry County Common Pleas Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.