[Cite as *State v. Nichter*, 2016-Ohio-7268.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-886 |
| v. | : | (C.P.C. No. 10CR-7383) |
| Daniel J. Nichter, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 11, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant.

**On brief:** *Taft Stettinius & Hollister LLP*, *David H. Thomas*, and *Kathryn S. Wallrabenstein*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a decision of the Franklin County Court of Common Pleas granting the request of defendant-appellee, Daniel J. Nichter, for judicial release. For the reasons set forth below, we reverse.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 20, 2010, appellant filed an indictment charging appellee with 1 count of engaging in a pattern of corrupt activity under R.C. 2923.32, 1 count of theft under R.C. 2913.02, 22 counts of identity fraud under R.C. 2913.49, 20 counts of forgery under R.C. 2913.31, and 4 counts of receiving stolen property under R.C. 2913.51. The indictment alleged that appellee had held himself out as several different licensed

residential real estate appraisers and forged appraisals in their names, resulting in a number of banks lending mortgage loans valued over $1,000,000.

{¶ 3} Pursuant to a plea agreement, appellee pled guilty to three counts of identity fraud, each a second-degree felony under R.C. 2913.49, on November 17, 2011. The parties jointly recommended to the trial court sentences of four years on each count, to run concurrently.

{¶ 4} On January 13, 2012, the trial court accepted appellee's plea on three counts of identity theft and dismissed the remaining counts. Appellee was sentenced to four years of imprisonment on each count, all to be served concurrently, and ordered him to write letters of apology to the victims.

{¶ 5} After serving seven months, appellee filed a motion for judicial release on August 12, 2012. The trial court overruled the motion but indicated that it would reconsider the request after appellee had served one year of his sentence.

{¶ 6} Appellee filed another motion for judicial release on May 24, 2013. The trial court held a hearing on November 22, 2013 to consider the motion. Appellant urged the trial court to deny the motion based on the seriousness of the crime. The trial court granted the motion and granted appellee judicial release, and appellant appealed.

{¶ 7} We reversed, holding that the trial court had failed to make the "very specific set of findings" required by R.C. 2929.20(J) and to "justify its findings with an analysis of the relevant R.C. 2929.12 factors." *State v. Nichter*, 10th Dist. No. 14AP-34, 2014-Ohio-4226, ¶ 13 ("*Nichter I*").

{¶ 8} The trial court held a second hearing on November 14, 2014, at which time it read the statutory language into the record and granted appellee's request. Appellant appealed the decision of the trial court citing the seriousness of the offense.

{¶ 9} Once again, we reversed. *State v. Nichter*, 10th Dist. No. 15AP-40, 2015-Ohio-3489 ("*Nichter II*"). We noted that the trial court "read verbatim" the language of the statute and "acknowledged the required statutory findings" but "failed to actually make the findings required" by the statute. *Id.* at ¶ 8-9.

{¶ 10} The trial court held a third hearing on September 10, 2015. Appellant again asserted that granting judicial release would demean the seriousness of the offenses. One

of appellee's victims, Dirk Reece, described the damage to his professional reputation caused by appellee's offenses and informed the court that appellee had delayed in writing a letter of apology that the court had required.

{¶ 11} After reviewing the procedural history of the case, the trial court went through each of the statutory factors under R.C. 2929.12 and determined whether or not they applied to appellee. The court cited appellee's previous lack of a criminal record, its conclusion that appellee was unlikely to offend again, the restitution that appellee had been making, and appellee's "genuine remorse." (Sept. 10, 2015 Tr. at 17.)

{¶ 12} After emphasizing the purposes of the felony sentencing statute, the trial court concluded with the following observations:

> This court continues to be sensitive to the life-changing challenges that Mr. Reece and the other victims in this case have faced and will continue to face, and does not take lightly the pain, shame, and embarrassment that each has suffered.
>
> However, this court also believes that [appellee] has learned an invaluable lesson from the almost two years of incarceration that he has served, and it should be clear to him based on this court's intolerance for those who fail to abide by its orders, that this court would have no issue or qualm with returning [appellee] to the institution should he fail to abide by the laws of the state and the conditions of his community control.
>
> This court now believes that [appellee] should be permitted to begin the phase of this process that is contemplated by statutory requirements in setting out the purposes and principles of felony sentencing, making restitution to his victims and to the community that trusted him to serve it consistent with the standards associated with his profession.
>
> [Appellee's counsel], is there anything else that you would like to place on the record?
>
> [APPELLEE'S COUNSEL]: Your Honor, out of an abundance of caution, may I make an inquiry of the court, so we have a full record here. The court may have said this, but is the court finding pursuant to 2929.20(J)(1)(B), that judicial release in this case did not demean the seriousness of [appellee's] conduct, and I assume the court adopts its reasoning and its analysis of 2929.12 factors in making such a finding?

> THE COURT:  Correct. Pursuant to Revised Code Sections 2929.20(J)(1)(B), the court will find that a sanction other than a prison term would not demean the seriousness of the offense.

(Tr. at 25-26.)

{¶ 13} Appellant appealed to this court from the judgment of the trial court.

## II.  ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following as error:

> THE TRIAL COURT ERRED IN GRANTING JUDICIAL RELEASE IN THE ABSENCE OF RECORD SUPPORT FOR THE NECESSARY FINDING RELATED TO SERIOUSNESS.

## III.  STANDARD OF REVIEW

{¶ 15} As a matter of right, appellant may appeal a trial court's decision modifying a previously imposed sentence for a felony of the first or second degree by a grant of judicial release.  R.C. 2953.08(B)(3).  The standard or review applied by an appellate court in reviewing a trial court's decision to grant judicial release is found in R.C. 2953.08(G)(2), which provides as follows:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under * * * division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b)  That the sentence is otherwise contrary to law.

{¶ 16} Appellant's assignment of error alleges only that the trial court's findings regarding the factors listed in R.C. 2929.12(C) are clearly and convincingly unsupported by the evidence in the record. R.C. 2953.08(G)(2)(a). Appellant does not challenge the trial court's decision as being clearly and convincingly "contrary to law" under R.C. 2953.08(G)(2)(b).[1] Accordingly, we will confine our analysis to the argument made by the assignment of error. App.R. 12(A) and 16.

{¶ 17} In *State v. Marcum*, ___ Ohio St.3d ___, 2016-Ohio-1002, ¶ 22, the Supreme Court of Ohio recently construed R.C. 2953.08(G)(2)(a) in the context of an appeal from a trial court determination regarding judicial release. The court held that "R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under '* * * section 2929.20 of the Revised Code.' " *Id.*, quoting R.C. 2953.08(G)(2)(a), citing S*tate v. Belew*, 140 Ohio St.3d 221, 2014-Ohio-2964, ¶ 12 (Lanzinger, J., dissenting from the decision to dismiss the appeal as having been improvidently accepted).

{¶ 18} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## IV. ANALYSIS

{¶ 19} When considering a defendant's request for judicial release, R.C. 2929.20(J) dictates the trial court's analysis. The statute provides as follows:

> (1) A court shall not grant a judicial release under this section to an eligible offender who is imprisoned for a felony of the first or second degree, * * * unless the court, with reference to factors under section 2929.12 of the Revised Code, finds both of the following:

---

[1] In the context of felony sentencing under R.C. 2953.08(G)(2)(b), "[a] sentence is contrary to law when it imposes a sentence that is not within the statutory range," *State v. Scott*, 8th Dist. No. 103696, 2016-Ohio-5929, ¶ 6, citing *State v. Younker*, 2d Dist. No. 26414, 2015-Ohio-2066, or when the sentencing decision " 'manifestly ignores an issue or factor which a statute requires a court to consider.' " *State v. English*, 2d Dist. No. 26337, 2015-Ohio-1665, ¶ 21, quoting *State v. Lofton*, 2d Dist. No. 19852, 2004-Ohio-169, ¶ 11.

(a) That a sanction other than a prison term would adequately punish the offender and protect the public from future criminal violations by the eligible offender because the applicable factors indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism;

(b) That a sanction other than a prison term would not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense.

(2) A court that grants a judicial release to an eligible offender under division (J)(1) of this section shall specify on the record both findings required in that division and also shall list all the factors described in that division that were presented at the hearing.

{¶ 20} As set out above, in *Nichter I*, we ordered the trial court to make the "very specific set of findings" required by R.C. 2929.20(J) and to "justify its findings with an analysis of the relevant R.C. 2929.12 factors." *Id.* at ¶ 13. In *Nichter II*, we ordered the trial court to "actually make the findings required by R.C. 2929.20(J)(1) " and "consider the factors in R.C. 2929.12(B) and (C), which address the seriousness of the offender's conduct." *Id.* at ¶ 9. By its assignment of error, appellant concedes that the trial court has complied with this court's remand order by making both of the findings required by R.C. 2929.20(J)(1) and by considering the factors in R.C. 2929.12(B) and (C), which address the seriousness of the offender's conduct. Appellant argues, however, the record clearly and convincingly fails to support the trial court's finding under R.C. 2929.20(J)(1)(b), that a sanction other than a prison term would not demean the seriousness of the offense. More particularly, appellant claims that the statutory mitigating factors that the trial court found to exist in this case are clearly and convincingly unsupported by the record. Accordingly, appellant maintains that the trial court committed reversible error in finding that statutory factors indicating that the eligible offender's conduct in committing the offense was less serious than conduct normally constituting the offense outweighed the

factors indicating that appellee's conduct was more serious than conduct normally constituting the offense.  We agree.

{¶ 21}  R.C. 2929.12 lists the factors that a trial court must consider in determining the seriousness of the offender's conduct.  R.C. 2929.12(B), which sets forth the "more serious" factors, provides as follows:

> The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that *the offender's conduct is more serious than conduct normally constituting the offense*:
>
> (1)  The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2)  The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> (3)  The offender held a public office or position of trust in the community, and the offense related to that office or position.
>
> (4)  The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
>
> (5)  The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
>
> (6)  The offender's relationship with the victim facilitated the offense.
>
> (7)  The offender committed the offense for hire or as a part of an organized criminal activity.
>
> (8)  In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
>
> (9)  If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or

> household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

(Emphasis added.)

{¶ 22} The trial court found that the first, seventh, eighth, and ninth factors were not present. Regarding the second factor, R.C. 2929.12(B)(2), concerning "serious physical, psychological, or economic harm as a result of the offense," the trial court stated:

> Without question, that factor is present. I have been honored to hear from Mr. Reece on several occasions indicating the hardship that he has endured because of [appellee's] choices. The court will find that there has been both psychological and economic harm that the victim has suffered.

(Tr. at 18-19.)[2]

{¶ 23} The trial court found the third factor, R.C. 2929.12(B)(3), which asks whether the "offender held a public office or position of trust in the community, and the offense related to that office or position," to be relevant. The trial court stated:

> [Appellee] was a licensed real estate appraiser and mortgage broker in this state and had been permitted by state executive agencies to perform work within certain professional standards. He did hold a position of trust in the community.

(Tr. at 19.)

{¶ 24} The trial court found the fourth factor to be relevant as well. This factor, R.C. 2929.12(B)(4), concerns whether "[t]he offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice." The trial court stated:

> Based on the facts of this case, it is clear to the court that [appellee] had access to these electronic signatures that allowed him to prepare these fraudulent appraisals, and as a licensed broker and appraiser, the court would find that he would have an obligation to prevent that kind of an offense.

---

[2] Mr. Reece closed his remarks by stating: "on behalf of myself, the other victim in this case, the other unknown victims, all of these legal minds in here agreed that four years was a reasonable time for [appellee] to serve for adequate punishment and rehabilitation. On behalf of all of the victims in this case, I ask Your Honor to impose the original sentence." (Tr. 6-7.)

(Tr. at 19.)

{¶ 25} The fifth factor, R.C. 2929.12(B)(5), which asks if appellee's "professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others," was found partially applicable.  The trial court stated:

> While the court will not find that [appellee's] conduct is likely to influence the future conduct of others, the court will find that his occupation is what allowed him to have access to those electronic signatures.

(Tr. at 20.)

{¶ 26} The trial court found the sixth factor, R.C. 2929.12(B)(6), concerning whether "[t]he offender's relationship with the victim facilitated the offense," to be relevant:

> In the presentence investigation report there is a statement that [appellee] was working with them.  The court is unclear whether that statement means that he worked directly with Mr. Reece and Ms. Goldsbury, or whether they worked in the same profession.  But, again, we do know that [appellee] had access to those electronic signatures.

(Tr. at 20.)

{¶ 27} After this analysis, the trial court turned to consideration of the "less serious" factors under R.C. 2929.12(C).  The statute provides:

> The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that *the offender's conduct is less serious than conduct normally constituting the offense*:
>
> (1)  The victim induced or facilitated the offense.
>
> (2) In committing the offense, the offender acted under strong provocation.
>
> (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(Emphasis added.)

{¶ 28} The trial court found that the first factor was not present. However, the trial court found that the second, third, and fourth factors were present. Regarding the second factor, R.C. 2929.12(C)(2), which asks whether the defendant "acted under strong provocation," the trial court stated:

From the defendant's perspective, that is present. He stated again in his presentence report that he was in dire financial straits, and while the court would never find that this was a right choice to make, from [appellee's] perspective, he believed that he was acting under strong provocation based on his dire financial straits.

(Tr. at 22.)

{¶ 29} With regard to the third factor, which applies if "the offender did not cause or expect to cause physical harm to any person or property," the trial court found that it was also present. R.C. 2929.12(C)(3). The trial court found that there was "no physical harm to any of the victims involved in this case." (Tr. at 22.). Finally, the court considered the fourth factor, R.C. 2929.12(C)(4), which asks whether "[t]here are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." Without identifying any particular grounds for mitigation, the trial court found that this factor was "present." (Tr. at 22.) The trial court then concluded as follows:

Again, after balancing the factors, the court finds and concludes that the defendant's conduct is less serious than conduct normally constituting the offense.

(Tr. at 22.)

{¶ 30} In order for the trial court to find that a sanction other than a prison term would not demean the seriousness of the offense, the trial court was required to weigh the factors indicating that appellee's conduct in committing identity fraud was less serious than conduct normally constituting identity fraud against the factors indicating that the his conduct was more serious than conduct normally constituting that offense. R.C.

2929.20(J)(1)(b).  In this instance, even though the trial court determined that four of the statutory "more serious" factors were present, the trial court concluded that those factors were outweighed by the three mitigating factors that were present.  As noted above, the trial court listed three statutory mitigating factors in support of a finding that appellee's conduct was less serious than the conduct normally constituting identity fraud: the absence of physical harm, strong provocation, and "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."  (Tr. at 22.)  Based on these factors, the trial court found that a sanction other than prison would not demean the seriousness of the offense.  Appellant argues that this finding is clearly and convincingly unsupported by the evidence because the statutory mitigating factors identified by the trial court were either not present at all or were of dubious value in mitigation of appellee's conduct.  We agree.

### A.  Strong Provocation

{¶ 31} The trial court relied on a statement attributed to appellee in the presentencing report as the factual basis for its finding that appellee committed identity fraud under "strong provocation."  The statement reads, in relevant part, as follows:

> I was in dire straights [sic] financially and could not afford my monthly bills. I used someone else's electronic signature on appraisals. I did it to make money.

(Presentence Investigation Report at 4.)

{¶ 32} R.C. 2929.12 does not define the term "strong provocation"; however, under Ohio law, "serious provocation" may reduce the degree of certain violent offenses.  *See* R.C. 2903.03(A); 2903.12(A).  For example, "[a] defendant on trial for murder must show by a preponderance of the evidence that he or she acted under the influence of sudden passion or in a sudden fit of rage, *brought on by the victim's serious provocation*, in order to be convicted of voluntary manslaughter rather than murder."  (Emphasis added.)  *State v. McKinzie*, 10th Dist. No. 00AP-1182 (June 5, 2001), citing *State v. Rhodes*, 63 Ohio St.3d 613, 619 (1992).  " '[S]erious provocation' " is provocation that is " 'reasonably sufficient to bring on extreme stress and * * * reasonably sufficient to incite or to arouse the defendant into using deadly force.' "  *Id.*, quoting *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph five of the syllabus.

{¶ 33} Under R.C. 2929.04(B)(2), the existence of "strong provocation" is one of the factors the trial court may consider in mitigation of the death penalty. R.C. 2929.04(B) provides that when certain statutory aggravating circumstance are found, the court:

> [S]hall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
>
> * * *
>
> (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.

{¶ 34} The statutory law authorizes a trial court to consider provocation as a mitigating factor in cases where the conduct of the victim has incited or aroused the offender to commit an offense of violence. Black's Law Dictionary defines "provocation" as "[t]he act of inciting another to do something, esp. to commit a crime." *Black's Law Dictionary* 1421 (10th Ed.2009).

{¶ 35} There is no claim by appellee that any of his victims caused or contributed to his dire financial straits and inability to afford his monthly bills. Rather, the evidence in the record clearly and convincingly supports a finding that appellee's financial difficulties were caused by his own chronic overspending. The presentencing investigation contains the following information under the heading "Finances":

> In 06/11, the offender declared bankruptcy and approximately $200,000.00 was dismissed in Franklin County. He reports two prior bankruptcies, one in 1990 in the amount of $100,000.00 and the other approximately 8 years ago in the amount of $300,000.00. Currently, he states he is struggling financially and worries about finances regularly.

(Presentencing Investigation Report at 9.)

{¶ 36} In the absence of any evidence suggesting another cause of appellee's financial problems, the only reasonable conclusion to draw from this record is that appellee caused his own dire financial straits by engaging in chronic overspending. *See State v. Bodkins*, 2d Dist No. 10-CA-38, 2011-Ohio-1274 (at sentencing, a defendant is

entitled to introduce evidence contradicting negative information in the presentencing investigation). Even if it were permissible on this record to infer that appellee's dire financial straits and inability to afford his monthly bills arose from circumstances outside of his control, appellee pointed to no information in the record which would show that he was provoked by the victims in this case or by any other third party. Nor has appellee cited a single Ohio authority holding that a finding of "strong provocation" may arise from the conduct of the offender, and this court has not found any such authority.

{¶ 37} Additionally, in determining whether provocation is reasonably sufficient, Ohio courts "first apply an objective standard by determining whether a reasonable trier of fact 'would decide that an actor was reasonably provoked by the victim.' " *McKinzie*, quoting *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). Then, "[i]t is only when the objective standard is met that the *Deem* test of the 'emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time' must be considered." *Id.*, quoting *Shane* at 634.

{¶ 38} Here, the trial court found as follows:

> *From the defendant's perspective*, [provocation] is present. He stated again in his presentence report that he was in dire financial straits, and while the court would never find that this was a right choice to make, *from [appellee's] perspective*, he believed that he was acting under strong provocation based on his dire financial straits.

(Emphasis added.) (Tr. at 22.)

{¶ 39} The trial court's finding that appellee acted under "strong provocation" is based solely on his subjective belief that his financial difficulties compelled him to commit the offenses. Consequently, even if it were permissible for the trial court to consider appellee's self-induced financial difficulties as "strong provocation," appellee's subjective belief that he acted with provocation does not establish the existence of legally sufficient provocation.

{¶ 40} Finally, appellee has not cited any Ohio authority holding that an offender's dire financial straits and inability to afford monthly bills qualifies as provocation to commit any offense, let alone "strong provocation." At most, appellee's statement at the presentencing investigation establishes that he was motivated to commit identity fraud by

his own selfish need to obtain funds to cover his monthly expenses.  The existence of a motive to commit the offense is not one of the mitigating factors listed under R.C. 2929.12(C).

{¶ 41} Based on the foregoing, we find that the record clearly and convincingly fails to support the trial court's determination that in committing identity theft appellee acted with "strong provocation."  Thus, the trial court erred when it considered provocation as one of the factors indicating that appellee's conduct was less serious than conduct normally constituting identity fraud.

### B.  Absence of Physical Harm

{¶ 42} The trial court also found that the mitigating factor listed in R.C. 2929.12(C)(3) existed in this case because, in committing identity fraud, appellee "did not cause or expect to cause physical harm to any person or property."  Though the facts underlying appellee's crimes show that the mitigating factor listed in R.C. 2929.12(C)(3) exists, we find that this factor is largely irrelevant to the analysis in this case because the conduct normally constituting identity fraud creates no risk of *physical harm* to any person or property.  R.C. 2913.49.  The fact that appellee, in committing identity fraud, did not cause or intend to cause physical harm to persons or property does not mean that his conduct was less serious than conduct normally constituting that offense.  *See*, *e.g.*, *State v. Smith*, 9th Dist. No. 11CA0115-M, 2012-Ohio-2558, ¶ 7 (for a conviction of a single count of trafficking in drugs, none of the mitigating factors under R.C. 2929.12 are relevant); *State v. McClusky*, 6th Dist. No. WD-03-018, 2004-Ohio-85, ¶ 25 (where defendant is convicted of cocaine possession, whether or not physical harm was intended by appellant's drug abuse was not a relevant mitigating factor for sentencing).  In our view, the factor listed in R.C. 2929.12(C)(3) is of dubious value in mitigation of appellee's conduct.

### C.  Other Substantial Grounds

{¶ 43} The trial court employed the catch-all provision of R.C. 2929.12(C)(4) when it found that other substantial grounds to mitigate appellee's offenses existed in this case. Under the applicable standard of review, this court must determine whether the record supports a finding that a sanction other than prison will not demean the seriousness of the offense because factors indicating that the eligible offender's conduct in committing

the offense was less serious than conduct normally constituting the offense outweigh factors indicating that the eligible offender's conduct was more serious than conduct normally constituting the offense. This court cannot conduct a proper review to determine whether the record supports the trial court's finding under R.C. 2929.20(J)(1)(b), where the trial court fails to identify one of the mitigating factors it relied on in conducting the statutory analysis.

{¶ 44} Nor do we consider it appropriate for this court to assume that the trial court treated appellee's financial problems as a mitigating factor under the catch-all provision in R.C. 2929.12(C)(4). The trial court expressly stated that it considered appellee's dire financial straits as "strong provocation" under R.C. 2929.12(C)(2) and did not identify the other "substantial grounds" on which it relied.

{¶ 45} The Supreme Court recently observed that "R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under '* * * section 2929.20 of the Revised Code.' " *Marcum* at ¶ 22, quoting R.C. 2943.08(G)(2)(a), citing *Belew* at ¶ 12. There is no dispute in this case that four of the "more serious" factors listed in R.C. 2929.12(B) are present in this case. Because we have determined that the record clearly and convincingly fails to support the existence of "strong provocation" under R.C. 2929.12(C)(2), and because the existence of the factor listed in R.C. 2929.12(C)(3) is of dubious value in mitigating appellee's conduct in this case, it is difficult to conceive how the trial could have found, on this record, that the mitigating factors under R.C. 2929.12(C) outweighed the R.C. 2929.12(B) factors. Nevertheless, because the trial court expressly relied on other "substantial grounds to mitigate [appellee's] conduct," in making its finding under R.C. 2929.20(J)(1)(b), but did not identify those grounds, rather than modify or vacate the trial court's judgment, this matter shall be remanded for the trial court to expressly identify the other substantial grounds mitigating appellee's conduct on which it relied and to reweigh the statutory factors in light of this decision. (Tr. at 22.)

{¶ 46} We note that appellant has expressed concern with comments made by the trial court indicating that it has no intention of reversing its ruling on appellee's motion for judicial release regardless of this court's review. The law of the case doctrine compels the trial court to follow the mandates of this court, regardless of any previous statement to

the contrary. *See Nolan v. Nolan*, 11 Ohio St.3d 1, 5 (1984); *Hawley v. Ritley*, 35 Ohio St.3d 157, 160 (1988). Moreover, a court of appeals lacks jurisdiction to rule on a motion to recuse a trial court judge or to pass on the disqualification of a trial court judge. *See* R.C. 2701.03.

{¶ 47} For the foregoing reasons, we sustain appellant's sole assignment of error.

## V. CONCLUSION

{¶ 48} Having sustained appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the cause for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER, J., concurs.
HORTON, J., dissents.

HORTON, J., dissenting.

{¶ 49} Although the majority cites R.C. 2953.08(G)(2) and the definition of "clear and convincing" found in *State v. Marcum*, __Ohio St.3d. __, 2016-Ohio-1002, the standard of review it applies falls far short of the deference required by the authorities cited below. In fact, I believe that the standard that the majority actually applies is not only insufficiently deferential to the trial court but, as explained below, contrary to the Supreme Court of Ohio's controlling interpretation of the language of R.C. 2953.08. For the following reasons, I respectfully dissent.

{¶ 50} The standard of review that this court must apply to appeals of felony sentences and sentence modifications arising from judicial release is set forth under R.C. 2953.08(G)(2):

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. *The appellate court's standard for review is not whether the sentencing court abused its discretion.* The appellate court may take any action authorized by this

division if it *clearly and convincingly* finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

(Emphasis added.)

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus (construing R.C. 2953.08(G)(2) on appeal of a felony sentence).

{¶ 51} The Eighth District Court of Appeals explained the deference required by the R.C. 2953.08(G)(2) standard of review as follows:

It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, ¶ 20-21 (remanding for resentencing after trial court's failure to "make separate and distinct findings" required by R.C. 2929.14(C)(4) before imposing consecutive sentences).

{¶ 52} First, a word about R.C. 2953.08. The first subdivision, R.C. 2953.08(A), enumerates the grounds under which a defendant may appeal a felony sentence. The second subdivision, R.C. 2953.08(B), does the same for the state, but also allows the state to appeal a sentence modification due to judicial release granted under R.C. 2929.20. In contrast, the statute does not grant a defendant the right to appeal a denial of a request for judicial release. *See* R.C. 2953.08(B); *State v. Hedgecoth*, 1st Dist. No. C-060190, 2007-Ohio-4462, ¶ 9. However, the state may only appeal a sentence modification based on judicial release if the original sentence "was imposed for a felony of the first or second degree." R.C. 2953.08(B)(3). This distinction demonstrates an elementary jurisdictional principle: "the state may appeal in a criminal case only when a statute gives the state express authority to do so." *State v. Thompson*, 10th Dist. No. 03AP-841, 2004-Ohio-3229, ¶ 11, citing Ohio Constitution, Article IV, Section 3(B)(2). Thus, the scope of the state's right to appeal a sentence modification extends only as far as the statute describes.

{¶ 53} The Supreme Court of Ohio addressed the scope of the state's right to appeal a sentence modification based on judicial release in *State v. Cunningham*, 113 Ohio St.3d 108, 2007-Ohio-1245. In *Cunningham*, a defendant was sentenced to community control after pleading guilty to a felony of the fifth degree, theft under R.C. 2913.02. *Id.* at ¶ 2. After the defendant violated the terms of the community control sentence, the trial court imposed a one-year term of incarceration. *Id.* Two months after the sentence began, the defendant filed a motion for judicial release under R.C. 2929.20 but withdrew the motion before the trial court could rule on it. *Id.* at ¶ 2. After filing a second motion for judicial release, the defendant also moved the trial court to "reinstate" the first motion. *Id.* at ¶ 3. The trial court granted the motion and modified the defendant's sentence. *Id.*

{¶ 54} The state appealed, asserting that the second motion was untimely and, therefore, a judicial release determination that it was entitled to appeal as "contrary to law" under R.C. 2953.08(B)(2). *Id.* at ¶ 12. The Supreme Court disagreed, finding no

grounds for the appeal based on the plain language of R.C. 2953.08(B). The statute allows that the state:

> "[M]ay appeal as a matter of right a sentence imposed upon a defendant who is convicted of or pleads guilty to a felony or, in the circumstances described in division (B)(3) of this section the modification of a sentence imposed upon such a defendant, on any of the following grounds:
>
> * * *
>
> (2) The sentence is contrary to law.
>
> (3) The sentence is a modification under section 2929.20 of the Revised Code of a sentence that was imposed for a felony of the first or second degree."

*Id.* at ¶ 7-10, quoting R.C. 2953.08(B).

{¶ 55} In its analysis, *Cunningham* first observed that:

> [T]he plain language of R.C. 2953.08(B)(3) does not include any reference to a felony of the third, fourth, or fifth degree. By including only felonies of the first and second degree within the text of (B)(3), the General Assembly has excluded all other felony offenses of a lesser degree because "the express inclusion of one thing implies the exclusion of the other."

*Id.* at ¶ 20, quoting *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 24.

{¶ 56} *Cunningham* also rejected the state's argument that it could appeal a sentence modification under the "contrary to law" prong of R.C. 2953.08(B)(2):

> Finally, we recognize that the state, relying on R.C. 2953.08(B)(2), contends that it has a right to appeal a sentence modification that is contrary to law. Here, it urges that the court acted contrary to law in permitting Cunningham to reinstate a motion that had been withdrawn and that would have been untimely if it were refiled. A careful examination of R.C. 2953.08(B)(2), however, reveals that it does not refer to the *modification* of a sentence; rather, it authorizes the prosecuting attorney to appeal, as a matter of right, a *sentence* imposed on a defendant on the grounds that "[t]he sentence is contrary to law." Thus, it

> does not apply to a modification of a sentence that is allegedly contrary to law.

(Emphasis sic.)  *Id.* at ¶ 22.

{¶ 57} For two reasons, the majority's decision is inconsistent with the holding and analysis in *Cunningham*.  First, the majority's predominant rationale for reversal is that the trial court applied a legally incorrect definition of "strong provocation" under R.C. 2929.12(C)(2).  Yet, *Cunningham* holds there is no right to appeal a sentence *modification* that is contrary to law.  The majority has allowed the state to bring such an appeal by entertaining and accepting the argument that the trial court's definition of one of the "less serious" factors under R.C. 2929.12(C) that led to the sentence modification was contrary to "Ohio law."  (Appellant's Brief at 47.)

{¶ 58} Second, the Supreme Court's act of statutory interpretation in *Cunningham* applies with equal force to the language defining the standard of review under R.C. 2953.08(G)(2) for appeals of sentences and sentence modifications.  The consequence of applying that interpretation is that the R.C. 2953.08(G)(2) standard of review does not allow an appellate court to reverse a sentence *modification* if it is contrary to law. In setting forth the standard of review, R.C. 2953.08(G)(2) states that the appellate court must "clearly and convincingly find[] either of the following: (a) That the record does not support the sentencing court's findings under * * * of section 2929.20 of the Revised Code * * *; [or] (b) That the sentence is otherwise contrary to law."  The statute's failure to "refer to the *modification* of a sentence" in R.C. 2953.08(G)(2)(b) is identical to the omission in R.C. 2953.08(B)(2) that led *Cunningham* to hold that the provision did not apply to sentence modifications through judicial release, only appeals of original sentences. *Id.* at ¶ 22. Further indication that the standard of review for sentence modifications extends only to whether "the record does not support the sentencing court's findings" is the explicit reference in R.C. 2953.08(G)(2)(a) to 2929.20, the judicial release statute, which is not referenced in R.C. 2953.08(G)(2)(b), the "otherwise contrary to law" prong.

{¶ 59} Recognizing that the standard of review of sentence modifications based on judicial release determinations is confined to R.C. 2953.08(G)(2)(a) is only logical.  If the standard of review of judicial release determinations extended to whether they were

"otherwise contrary to law," *Cunningham*'s holding that the state has no right of appeal arising from a judicial release determination that is "contrary to law" under R.C. 2953.08(B)(2) would be rendered a nullity.  The applicable standard of review cannot enlarge the scope of the state's right of appeal.[3]

{¶ 60} For the foregoing reasons, I believe that the majority is precluded from applying a standard of review that allows reversal of the trial court on the grounds that the judicial release determination resulting in a sentence modification was "otherwise contrary to law."  R.C. 2953.08(G)(2)(a).  Based on the reference in the assignment of error to the "record," the majority states that the state "does not challenge the trial court's decision as being clearly and convincingly 'contrary to law' under R.C. 2953.08(G)(2)(b)," and accordingly "confine[s]" its analysis to the question of whether the record supports the trial court's findings under R.C. 2953.08(G)(2)(a). (Majority Decision at ¶ 16.) Regardless of the reference to the "record" in the assignment of error, the state's argument that the trial court applied a definition of "strong provocation" that is legally incorrect under "Ohio law" is, in effect, a stealth attempt to seek review of that finding under the "contrary to law" standard of R.C. 2953.08(G)(2)(b).  (Appellant's Brief at 47.) And, in spite of its assurances to the contrary, the majority's analysis amounts to an application of that standard. The majority is careful to couch its criticism in terms of the record and avoid use of the term "contrary to law," as when, for example, it states that "the record clearly and convincingly fails to support the trial court's determination that in committing identity theft appellee acted with 'strong provocation.' "  (Majority Decision at ¶ 41.)   Yet, this is the standard the majority actually applies when it rejects the R.C. 2929.12(C)(2) definition of "strong provocation" applied by the trial court. The majority's

---

[3] In light of the analysis in *Cunningham*, I believe that this court's decision in *State v. Williams*, 10th Dist. No. 10AP-55, 2010-Ohio-4519, ¶ 10, improperly applied the "contrary to law" standard to the state's appeal of a judicial release determination when it accepted the state's assertion that the "trial court's decision [was] contrary to law because it did not comply with R.C. 2929.20(H) when it failed to mention the factors listed in R.C. 2929.12 and how they factored into its decision to grant judicial release."  In such a situation, however, it is unnecessary to reference or apply the "contrary to law" standard under R.C. 2953.08(G)(2)(b) when a trial court fails to make the findings required by R.C. 2929.20 because a separate provision of the statute expressly addresses this error. R.C. 2953.08(G)(1) requires the court of appeals to "remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings" for failure to make them in accordance with R.C. 2929.20.

entire analysis flows from the principle that the definition applied by the trial court was contrary to law.

{¶ 61} Even if this were grounds for reversing the trial court, the definition of "strong provocation" that the majority faults the trial court for not applying is unpersuasive. Conceding that "R.C. 2929.12 does not define the term 'strong provocation,'" the majority looks to several other sources to support a definition of provocation that *necessarily* involves an affirmative act by a third party. (Majority Decision at ¶ 32.) It cites the use of the term "serious provocation" as an element of several violent offenses, voluntary manslaughter under R.C. 2903.03(A) and aggravated assault under R.C. 2903.12(A), where the term describes an attendant circumstance not found in the more serious counterparts of those offenses (murder and felonious assault). While the similarity of the terms "strong provocation" and "serious provocation" makes this a superficially appealing comparison, both offense statutes specifically refer to "serious provocation *occasioned by the victim.*" (Emphasis added.) R.C. 2903.03(A) and 2903.12(A). In contrast, the R.C. 2929.12(C) factor in question contains no reference to a victim or third party. It simply states "[i]n committing the offense, the offender acted under strong provocation." R.C. 2929.12(C)(2). This broader, more general use of the term "provocation" should not be limited by reference to a more restricted use of it in a completely different statute.

{¶ 62} Furthermore, the majority selectively quotes the dictionary entry on "provocation" from Black's Law Dictionary. It only quotes the first definition: "1. The act of inciting another to do something, esp. to commit a crime." *Black's Law Dictionary* 1421 (10th Ed.2009). The majority omits the second definition: "2. Something (such as words or actions) that affects a person's reason and self-control, esp. causing the person to commit a crime impulsively." *Id.* The second definition is substantially broader and, although it includes "words or actions," is not limited to them. Rather, it recognizes that "something" may provoke the offender. The trial court's findings comport with this definition.

{¶ 63} Further demonstrating that the majority is actually reviewing the trial court's decision under the "contrary to law" standard, it admonishes Nichter for not citing "a single Ohio authority holding that a finding of 'strong provocation' may arise from the

conduct of the offender, and this court has not found any such authority."   (Majority Decision at ¶ 36.)   Even if it were proper to apply this standard–which, for the reasons discussed, it is not under *Cunningham*—Nichter does not bear the burden on this appeal to show that the definition applied by the trial court was correct. The burden to show error belongs to the state.  *See, e.g., State v. Costlow*, 8th Dist. No. 89501, 2008-Ohio-1097, ¶ 15 ("The standard of review set forth in R.C. 2953.08(G)(2) places the burden on the state to make an affirmative showing of error by clear and convincing evidence"). None of the cases cited by the state in its briefing holds that "strong provocation" under R.C. 2929.12(C)(2) must, *as a matter of law*, arise from the action of "someone else," as the state asserts.  (Appellant's Brief at 47-48); *see State v. Davis*, 11th Dist. No. 2003-L-027, 2004-Ohio-2076, ¶ 16 (affirming the trial court's refusal to consider an informant's offer to sell the defendant cocaine as "strong provocation" under R.C. 2929.12(C)); *State v. Reissig*, 6th Dist. No. WD-03-019, 2004-Ohio-1642 (rejecting the argument that a wife's extramarital affair was "strong provocation" to induce the defendant to commit domestic violence offenses under R.C. 2929.12(C)(2), where the wife had "admitted to the affair several months before the incidents"); *State v. Almon*, 2d Dist. No. 19929, 2004-Ohio-1027, ¶ 10 (holding that "[t]he trial court reasonably rejected [the defendant's] suggestion that visiting with his family amounted to 'strong provocation' pursuant to R.C. 2929.12(C)").  Bearing in mind the state's burden, it would be proper to fault the state for not citing "a single Ohio authority" holding that the definition of "strong provocation" must arise from an affirmative act by the victim or third party to qualify as a mitigating factor under R.C. 2929.12(C).  (Majority Decision at ¶ 36.)

{¶ 64} Instead, the majority has cobbled together such a definition from two statutes that contain express references to "provocation occasioned by the victim" not found in R.C. 2929.12(C), the factors mitigating the death penalty under R.C. 2929.04(B)(2), and a partial reading of a Black's Law Dictionary entry that omits the half of the definition of "provocation" that actually supports the trial court's definition.  It was within the discretion of the trial court to apply a general definition of "strong provocation," where, as the majority admits, R.C. 2929.12(C) does not define the term. Considering the deferential standard of review, it is improper to fault the trial court for

failing to limit a term with multiple definitions to the restricted one advanced by the majority.

{¶ 65} Even accepting, for the sake of argument, the majority's definition of "strong provocation," its view of the record is untenable in light of the standard of review. The majority asserts that "the evidence in the record clearly and convincingly supports a finding that appellee's financial difficulties were caused by his own chronic overspending." (Majority Decision at ¶ 35.) The only source provided for this "finding" is the Presentence Investigation Report ("PSI"). The PSI mentions three bankruptcies and Nichter's description of financial difficulties: "Currently, he states he is struggling financially and worries about finances regularly."[4] (PSI at 9.) Two of the bankruptcies occurred so far in the past that they cannot plausibly be connected to Nichter's financial difficulties at the time of the offense conduct. From this, and the "absence of any evidence suggesting another cause of [Nichter's] financial problems," the majority believes that "the only reasonable conclusion to draw from this record is that [he] caused his own dire financial straits by engaging in chronic overspending." (Majority Decision at ¶ 36.)

{¶ 66} The relationship of Nichter's bankruptcies to the majority's analysis is unclear, but it has chosen to cite them when finding that he acted out of "selfish" motives stemming from "self-induced" financial problems. There is no evidence in the record regarding the cause of his bankruptcies. A study conducted between Nichter's second and third bankruptcies concluded that "62.1% of all bankruptcies in 2007" were medical. Himmelstein, *Medical Bankruptcy in the United States, 2007: Results of a National Study*, 122 Am.J.Med. 741 (2009). Another study found that "job loss, family breakup, and medical problems" caused over 80 percent of family bankruptcies, and that "[a]ll the other reasons combined - acts of God, calls to active duty for military reservists, car wrecks, *personal profligacy*, and so on - account for just thirteen percent of families in bankruptcy." (Emphasis added.) Warren, *The New Economy and the Unraveling Social Safety Net: The Growing Threat to Middle Class Families*, 69 Brooklyn L.Rev. 401, 411 (2004). In no way do I suggest that Nichter's bankruptcies arose from medical debt. My

---

[4] This statement refers to Nichter's financial problems at the time of the report's preparation. This does not qualify as evidence relevant to his state of mind during the period he committed the offenses, much less clear and convincing evidence, as required by the standard of review under R.C. 2953.08(G)(2).

point is that when statistics show that the majority of U.S. bankruptcies arise from medical debts, and there is no evidence at all in the record to explain the cause of a debtor's financial problems, even statistics make it less likely than not that the problems arose from selfishness or "chronic overspending."  Thus, the majority's assumption is not "the only reasonable conclusion to draw from th[e] record," as it asserts.   (Majority Decision at ¶ 36.)   Rather, it is simply guesswork contradicted by basic facts.  Thus, the majority's finding is irreconcilable with the clear and convincing standard, which requires a " 'measure or degree of proof which is more than a mere "preponderance of the evidence." ' "  *Marcum* at ¶ 22, quoting *Cross* at paragraph three of the syllabus.  For these reasons, there is absolutely no support in the record for the majority's speculative "finding," much less evidence that would "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established," as required under the clear and convincing standard.  *Marcum* at ¶ 23.

{¶ 67} Similarly, the majority states that the PSI's paraphrase of Nichter's statement regarding his financial difficulties "establishes that he was motivated to commit identity fraud by his own selfish need to obtain funds to cover his monthly expenses." (Majority Decision at ¶ 40.)   Where the PSI actually quotes Nichter, he states only the following: "I was in dire straights financially and could not afford my monthly bills."  (PSI at 4.)  The PSI is silent as to the cause of Nichter's financial difficulties and attests only to their severity.   Yet, the majority repeatedly refers to his problems as "self-induced," stemming from "chronic overspending" based on his "selfish" motives.  The insistence on such utterly baseless and unsupported factual conclusions contravenes the applicable standard of review.  There is no clear and convincing evidence for any of these findings, as the standard of review demands.

{¶ 68} Under the R.C. 2953.08(G)(2) standard, "appellate courts are prohibited from substituting their judgment for that of the trial judge."  *Venes* at ¶ 20.  It is difficult to explain the majority's analysis without concluding that it has done just that.  For the foregoing reasons, I respectfully dissent.

_____